**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RANDALL SAPP** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3** |
| **WOOD GROUP PSN, INC., et al.** | **SECTION: "G"(3)** |

**ORDER**

Before the Court is Defendants' Wood Group PSN, Inc., Flow Petroleum Service, Inc., Energy XXI Gulf Coast, Inc. and Abe's Boat Rentals, Inc.'s (collectively, "Defendants") "Motion to Exclude and/or Limit Expert Testimony,"[1] wherein Defendants seek to exclude the testimony of Plaintiff's experts, Fereydoun Aghazadeh ("Aghazadeh") and G. Fred Liebkemann ("Liebkemann"), on the grounds that "their opinions are not sufficiently tied to the facts of the case and will not assist the trier of fact."[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion in part and exclude the testimony of Aghazadeh, and deny the motion with regard to Liebkemann. Moreover, based on this decision, the Court denies as moot Defendants' "Motion to Exclude Cumulative Expert Testimony."[3]

**I. Background**

In this litigation, Plaintiff Randall Sapp ("Sapp"), a mechanic working on a platform at Eugene Island 32A, alleges that he was severely injured when he attempted to hoist a valve from a vessel onto the platform.[4] On November 24, 2015, Defendants filed the instant motion seeking to

---

[1] Rec. Doc. 73.

[2] Rec. Doc. 73-1 at p. 1.

[3] Rec. Doc. 72.

[4] Rec. Doc. 1.

exclude the testimony of Aghazadeh and Liebkemann on the basis that their expert testimony would be unreliable and inadmissible.[5] The same day, Defendants also filed a "Motion to Exclude Cumulative Expert Testimony."[6] On December 4, 2015, Plaintiff filed oppositions to both motions.[7] On December 9, 2015, with leave of Court, Defendants filed reply memoranda in support of both motions.[8] On December 11, 2015, with leave of Court, Plaintiff filed a sur-reply in opposition to the instant motion.[9] The Court denied Plaintiff's request for oral argument on the instant motion as untimely.[10]

## II. Law and Analysis

### A.      Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony.[11] Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[12]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702

---

[5]  Rec. Doc. 73.

[6]  Rec. Doc. 72.

[7]  Rec. Docs. 81, 82.

[8]  Rec. Docs. 99, 101.

[9]  Rec. Doc. 109.

[10]  Rec. Doc. 96.

[11]  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[12]  Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or

evidence admitted is not only relevant, but reliable."[13] The overarching goal "is to make certain that

an expert, whether basing testimony on professional studies or personal experience, employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field."[14]

A court's role as a gatekeeper does not replace the traditional adversary system,[15] and "[a]

review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception

rather than the rule."[16] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence."[17] "As a general rule, questions

relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion

rather than its admissibility."[18]

## B.   *Analysis*

In their motion and reply brief, Defendants first claim that the expert reports proffered by

Plaintiff are based on inaccurate facts and are therefore unreliable and inadmissible.[19] Specifically,

Defendants argue that Aghazadeh and Liebkemann intend to testify that Plaintiff's "handling,"

---

[13]   *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[14]   *Kumho Tire*, 526 U.S. at 152.

[15]   *See Daubert*, 509 U.S. at 596.

[16]   Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[17]   *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[18]   *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[19]   Rec. Doc. 73-1 at p. 3.

"lifting," or "pulling" of a 199-pound valve was unreasonably dangerous and caused his back injury, in direct contradiction of Plaintiff's deposition testimony stating that he never held, lifted or pulled the weight of the valve at the moment of the injury.[20] Therefore, Defendants aver, the experts' testimony is unreliable and should be excluded pursuant to Rule 702.[21] In response, Plaintiff argues in his opposition and sur-reply that Defendants have misconstrued Plaintiff's testimony, which plainly states that Plaintiff lifted and handled the weight of the choke valve, which he "caught" as it was falling and which jerked him forward, resulting in his injury.[22] Furthermore, Plaintiff contends, experts are allowed to rely on assumptions when forming their opinions, and attacks on the underlying facts upon which an expert's opinion is based go to the weight of evidence, but do not serve as a basis for the exclusion of evidence.[23]

Defendants' first objections to the experts' testimony hinge on what they allege is "undisputed" testimony contradicting the factual bases of the experts' opinions,[24] but it is clear to the Court that the testimony in question is in fact heavily disputed. Indeed, Wood Group attempted to make a similar argument that it was undisputed that Plaintiff had never been subject to the full weight of the valve in a motion for summary judgment,[25] which the Court denied, finding that questions of fact remained to be resolved by the fact-finder.[26]

---

[20] *Id.* at p. 2; Rec. Doc. 88-2 at p. 1.

[21] Rec. Doc. 73-1 at p. 4.

[22] Rec. Docs. 81 at p. 2; 107-1 at p. 1.

[23] Rec. Doc. 81 at pp. 2–3.

[24] Rec. Doc. 73-1 at p. 3.

[25] Rec. Doc. 74-1 at pp. 10–11.

[26] Rec. Doc. 113.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[27] Here, Defendants are free to argue to the jury, via cross-examination or competing testimony, that the experts' reports ought to be disregarded because they are based on facts that Defendants claim do not support the experts' conclusions. However, Rule 702 and the Supreme Court's ruling in *Daubert* suggest that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," rather than exclusion altogether, "are the traditional and appropriate means of attacking shaky but admissible evidence."[28] Therefore, the Court finds that the expert reports and testimony need not be excluded on the ground that they impermissibly rely on "inaccurate" facts.

Next, Defendants argue that the testimony of Plaintiff's experts will not assist the trier of fact because the jury can assess the relevant facts in this case using their common knowledge.[29] Defendants claim that the proffered testimony of Aghazadeh and Liebkemann "intrude[s] upon the domain of common sense matters," that Aghazadeh and Liebkemann required "no expertise of any kind" to come to their conclusions, and that the proposed experts impermissibly offer "unhelpful opinions" on topics such as the "failed safety culture" on the platform and the "ergonomics" of Sapp's alleged lift.[30] Defendants cite one Fifth Circuit case, as well as numerous district court decisions, that they claim involved similar testimony from so-called "safety experts" and which were excluded on the basis that a jury could assess the relevant issues without help from experts.[31]

---

[27] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[28] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[29] Rec. Doc. 73-1 at p. 4.

[30] *Id.* at p. 6; Rec. Doc. 88-2 at p. 3.

[31] Rec. Doc. 88-2 at p. 3.

Specifically, Defendants argue that courts have excluded expert testimony where they found that jurors could determine: (1) whether it was reasonable for a plaintiff to be instructed to manually move equipment under the circumstances presented;[32] (2) whether a defendant provided a safe work place and/or violated safety manual requirements;[33] (3) whether a defendant's supervision, safety equipment and training was adequate;[34] (4) whether a plaintiff's accident was due to his climbing and using a ladder improperly;[35] and (5) whether a defendant could have made the plaintiff's task safer with available tools.[36] Defendants argue that "[t]here is no difference in the case at hand, as a competent jury can easily understand the mechanics of lifting an object with a rope."[37]

In response, Plaintiff argues that the cases relied upon by Defendants all involve testimony that was based on non-technical aspects of work-place safety, and as long as his experts provide testimony on maters "beyond the common understanding and knowledge of the average juror," there is no basis for exclusion or limitation.[38] Specifically, Plaintiff asserts that Aghazadeh, a Professor of Engineering in the Department of Mechanical and Industrial Engineering at Louisiana State University, specializes in "the history and culture of ergonomics, and the history and culture of

---

[32]  *Id.* (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990)).

[33] *Id.* (citing *Bouton v. Kim Susan, Inc.*, No. 96-902, 1997 WL 61450, at *1 (E.D. La. Feb. 6, 1997)).

[34] *Id.* (citing *Arauio v. Treasure Chest Casino*, No. 97-3043, 1999 WL 219771, at *1 (E.D. La. Apr. 14, 1999)).

[35] *Id.* (citing *Arauio*, 1999 WL 219771, at *1).

[36] *Id.* (citing *Arauio*, 1999 WL 219771, at *1).

[37] *Id.* at p. 4.

[38] Rec. Doc. 81 at p. 4 (quoting *Grissom v. Seal Fleet*, 1997 U.S. Dist. LEXIS 16389, at *5 (E.D. La. Oct. 17, 1997)).

occupational safety with regards to the mechanics of manual lifting."[39] According to Plaintiff, Aghazadeh can testify that: (1) there was a "Failed Safety Culture" on the Eugene Island 32A platform; (2) that "Failed Safety Culture" resulted in numerous breakdowns in the safety protocols; and (3) based on all of these failures, Plaintiff was injured.[40] Plaintiff contends that Aghazadeh would also testify as to the ergonomics of Plaintiff's body positioning, the positioning of the 200-pound choke valve, and the effects of lifting versus catching a falling item of that weight.[41]

Plaintiff also argues that Liebkemann, a licensed mechanical engineer, would primarily testify as to the mechanics of the lift performed on the Eugene Island 32A platform, the pull force required to lift the valve at varying distances, the force required to hold the choke stationary, and the probabilities associated with accomplishing the lift according to the provided testimony.[42] According to Plaintiff, Liebkemann could also testify as to the alternative tools and mechanisms available to safely perform such a lift.[43]

Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[44] Furthermore, the district court has considerable discretion to admit or exclude expert testimony under Rule 702.[45]

---

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at p. 5.

[43] *Id.*

[44] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[45] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

Where a jury can "adeptly assess [the] situation using only their common experience and knowledge," however, expert testimony is unnecessary and it is within a district court judge's to exclude it.[46]

Here, the Court finds that Plaintiff has significantly overstated the "scientific, technical or other specialized knowledge" relied upon by both experts, as well as the scope of what the expert reports actually contain. For example, beginning with the expert report of Aghazadeh, Plaintiff argues that Aghazadeh "would testify as to the ergonomics of Plaintiff's body positioning, the positioning of the 200 pound choke valve and the effects of lifting vs. catching a falling item of that weight."[47] Aghazadeh's expert report, however, consists of five pages, just one of which lays out his opinions, and the vast majority of which is focused on the "safety culture," consisting of allegedly improper supervision and mockery of those who did not participate in hazardous operations.[48] Furthermore, to the extent that Aghazadeh concludes that "[d]ue to inertia, the effect of [the choke falling downward] is much more severe than just lifting a 200 pound load,"[49] Plaintiff does not make clear how Aghazadeh's alleged expertise in "the history and culture of ergonomics, and the history and culture of occupational safety with regards to the mechanics of manual lifting" translate into Aghazadeh's findings regarding the mechanics of the lift.

Defendants cite numerous district court cases, as well as one Fifth Circuit case, with facts that they claim are analogous to those presented here. Plaintiff attempts to rebut those cases as

---

[46] *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

[47] Rec. Doc. 81 at p. 4.

[48] Rec. Doc. 82-2 at pp. 4–5.

[49] *Id.* at p. 5.

involving testimony that was based on non-technical aspects of work-place safety, but does not supply the Court with relevant case law that he argues supports his position. A review of the cases cited by Defendants, most of which are persuasive but not binding authority, suggests that in similar circumstances, judges have excluded testimony where experts seek chiefly to opine on issues of workplace safety and supervision.[50] For example, in *Arauio v. Treasure Chest Casino, L.L.C.*,[51] cited by Defendants, the court found that the opinions of both proposed experts would not be helpful to the jury in a case where a plaintiff had fallen off a ladder while cleaning windows and the parties disputed whether the plaintiff's injury was a result of his improper use of the ladder, or the defendant's negligent failure to provide proper supervision and safety equipment and training. Here, the Court finds that Aghazadeh's proposed testimony, even as exaggerated by Plaintiff, speaks largely to issues and facts, such as whether Defendants complied with applicable job safety manuals, that lay jurors "could adeptly address . . . using only their common experience and knowledge."[52]

Turning next to the proposed testimony of Liebkemann, the Court finds that once again Plaintiff has overstated the scope of the expert report, but finds that there are some aspects of the report that may nevertheless be helpful to a lay juror. For example, Liebkemann's report relies not just on any alleged compliance or noncompliance with Energy XXI's safety manuals, but additionally relies on tables detailing the percentage of the male population that can pull certain

---

[50] *See, e.g.*, *Bouton v. Susan, Inc.*, No. 96-902, 1997 WL 61450, at \*3 (E.D. La. Feb. 6, 1997) (Vance, J.) (holding that expert testimony was not necessary to assist the jury in deciding whether a ship's captain had failed to provide a clean, safe workplace or to decide whether the deck of the ship on which the plaintiff had allegedly slipped and fell was slippery); *Matherne v. MISR Shipping Co.*, No. 88-2261, 1991 WL 99426, at \*1 (E.D. La. May 31, 1991) (Livaudais, J.) (holding that safety expert testimony was unnecessary as a jury was competent to determine the liability issues regarding whether the vessel stairs were properly secured to the gangway and, if not, whether defendant acted reasonably in failing to secure them).

[51] No. 97-3043, 1999 WL 219771 (E.D. La. Apr. 14, 1999) (Clement, J.).

[52] *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

weights "without experiencing excessive stress."[53] The report also details the force that would be required, based on the number of men handling the valve, to keep it from dropping.[54] Finally, Liebkemann's report suggests alternative methods available aboard the platform that could have aided in transporting the valve such that a purely manual lift would not have been required.[55]

The Court finds that such testimony could aid a trier of fact in determining whether, if Plaintiff's testimony is credited, he engaged in lifting or pulling weights that were outside the limits of most men's capacity, a fact that a lay juror cannot necessarily arrive at using only "common experience and knowledge." This is in contrast to the question of whether the alleged lift complied with Energy XXI's own safety manual, a question of fact that a jury can decide without the aid of expert testimony. Similarly, Liebkemann's testimony illuminates for the lay juror whether other options for transporting the valve were available, and whether those alternatives would have reduced any alleged risks by reducing the total weight borne by manual lifters.[56] Therefore, the Court finds that Liebkemann's expert report provides sufficient evidence of "scientific, technical or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."[57] As such, Liebkemann's testimony is admissible.

Finally, Defendants also filed a motion to exclude "cumulative" testimony, alleging that Aghazadeh and Liebkemann came to "nearly identical conclusions" based on "the same facts, materials, standards, existing policies, and alternative methods," and as such, their testimony should

---

[53] Rec. Doc. 82-4 at p. 6.

[54] *Id.* at p. 7.

[55] *Id.*

[56] *See id.*

[57] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

be limited to avoid needless overlap.[58] Because the Court hereby excludes the testimony of Aghazadeh, Defendants' motion to exclude cumulative testimony is moot.

### III. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Exclude and/or Limit Expert Testimony,"[59] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with regard to Aghazadeh's testimony and **DENIED** with regard to Liebkemann's testimony.

**IT IS FURTHER ORDERED** that Defendants' "Motion to Exclude Cumulative Expert Testimony"[60] is **DENIED AS MOOT.**

**NEW ORLEANS, LOUISIANA**, this ___12th___ day of January, 2016.

_Nannette Jolivette Brown_

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[58] Rec. Doc. 72-1.

[59] Rec. Doc. 73.

[60] Rec. Doc. 72.