UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RANDALL SAPP                                              CIVIL ACTION

VERSUS                                                    CASE NO. 15-3

WOOD GROUP PSN, INC., et al.                              SECTION: "G" (3)

## ORDER

In this litigation, Plaintiff Randal Sapp alleged that he was severely injured, due to the alleged negligence of the Defendants, when he attempted to hoist a valve from a vessel onto a platform.[1] On May 4, 2015, the Court granted an unopposed motion to substitute the Succession of Randal Sapp, Mary Ann Martin, as the plaintiff in this matter ("Plaintiff").[2] Pending before the Court is Plaintiff's "Motion to Enforce Settlement" against Defendants Abe's Boat Rentals, Inc. ("Abe's Boat Rentals") and Wood Group PSN, Inc. ("Wood Group").[3] After Plaintiff filed her motion, Plaintiff moved to dismiss Defendant Wood Group with prejudice,[4] which was granted by this Court.[5] Accordingly, Plaintiff's motion now only pertains to Defendant Abe's Boat Rentals. Having reviewed the motion, the memoranda is support, the memoranda in opposition, the record, and the applicable law, the Court has determined that an evidentiary hearing on this matter is required.

---

[1] Rec. Doc. 1 at 2–4.

[2] Rec. Doc. 136.

[3] Rec. Doc. 135.

[4] Rec. Doc. 151.

[5] Rec. Doc. 152.

1

**I. Background**

On March 2, 2016, Plaintiff reached a settlement with Defendants Wood Group, Abe's Boat Rentals, and Energy XXI Gulf Coast, Inc. ("Energy XXI").[6] Plaintiff reached a separate agreement with Flow Petroleum Services, Inc. ("Flow Petroleum") at a later date.[7] After notice from counsel, the Court dismissed the action, but retained jurisdiction to enforce the compromise agreed upon by the parties.[8] The parties drafted a Receipt, Release and Indemnification Agreement ("Agreement") to reflect their compromise, and Plaintiff represents that "final execution [of the agreement] is imminent."[9] On April 19, 2016, Energy XXI filed a Suggestion of Bankruptcy, indicating that it filed bankruptcy on April 14, 2016, in the United States Bankruptcy Court for the Southern District of Texas and advising the Court of the automatic stay.[10]

On May 2, 2016, Plaintiff filed the instant motion.[11] Abe's Boat Rentals filed an opposition on May 17, 2016.[12] With leave of Court, Plaintiff filed a reply on May 24, 2016.[13] Wood Group also originally filed an opposition and a sur-reply to the motion.[14] However, on July 8, 2016, the Court granted a motion to dismiss Wood Group with prejudice.[15] Likewise, Flow Petroleum filed

---

[6] Rec. Doc. 135-1 at 1.

[7] *Id.*

[8] Rec. Doc. 132.

[9] Rec. Doc. 135-1 at 1.

[10] *Id.* at 2; Rec. Doc. 133.

[11] Rec. Doc. 135.

[12] Rec. Docs. 140.

[13] Rec. Doc. 149.

[14] Rec. Docs. 141, 150.

[15] Rec. Doc. 152.

a response to the motion on May 11, 2016.[16] However, on July 11, 2016, the Court granted a motion to dismiss Flow Petroleum with prejudice.[17] Accordingly, the Court will only consider the memoranda filed by the remaining parties: Plaintiff and Defendant Abe's Boat Rentals.

## II. Parties' Arguments

### A.   *Plaintiff's Arguments in Support of its Motion to Enforce the Settlement*

In the instant motion, Plaintiff seeks an order to enforce the settlement agreement against Abe's Boat Rentals[18] in light of Energy XXI's bankruptcy filings, alleging that Abe's Boat Rentals is a "joint obligor[] with an indivisible obligation to fund the settlement."[19] According to Plaintiff, because the accident occurred on an offshore platform in the Gulf of Mexico off of the coast of Louisiana, the Outer Continental Shelf Lands Act ("OCSLA") requires application of Louisiana law in this matter.[20] Plaintiff asserts that Louisiana Civil Code article 3071 provides that "a compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."[21] Plaintiff contends that Louisiana Civil Code article 1788 provides that a joint obligation exists "when different obligors owe together one performance to one obligee, but neither is bound for the

---

[16] Rec. Doc. 137.

[17] Rec. Doc. 154.

[18] Plaintiff's original arguments sought to enforce the settlement against both Defendant Abe's Boat Rentals and Defendant Wood Group; however, the Court has since granted Plaintiff's motion to dismiss Wood Group with prejudice. Rec. Doc. 152. Accordingly, the motion now only seeks to enforce the settlement against Defendant Abe's Boat Rentals.

[19] Rec. Doc. 135-1 at 1.

[20] *Id.* at 2.

[21] *Id.*

3

whole."[22] However, Plaintiff represents that Louisiana Civil Code article 1789 states that when a joint obligation is indivisible, the joint obligors are "subject to the rules governing solidary obligors."[23] According to Plaintiff, Louisiana Civil Code article 1794 further provides that "[w]hen an obligation is solidary, the obligors are each liable for the whole performance and performance by any of the solidarily liable obligors relieves the others of liability to the obligee."[24]

Here, Plaintiff contends that "the parties have reached a full and final compromise, which simply awaits the formality of signatures."[25] According to Plaintiff, the email solidifying the deal stated that "Wood Group, Energy XXI and [Abe's Boat Rentals] (released parties) accept the offer $285k in exchange for a release of all claims."[26] Plaintiff further contends that it entered into an agreement with Wood Group, Energy XXI, and Abe's Boat Rentals for $285,000 and a separate agreement with Flow Petroleum for $30,000.[27] Plaintiff asserts that the language in the Receipt, Release and Indemnification Agreement ("Agreement") "clearly evidence[s] a joint obligation that Defendants owe to [Plaintiff]."[28] Plaintiff avers that the Agreement provides that "in consideration of the sum of **THREE HUNDRED FIFTEEN THOUSAND AND 00/100 ($315,000) DOLLARS**, the said sum being paid collectively to" Plaintiff "by or for the account of Flow Petroleum Services, Inc., Wood Group PSN, Inc., Energy XXI, Gulf Coast, Inc., and Abe's Boat

---

[22] *Id.* (citing La. Civ. Code art. 1788).

[23] *Id.* (citing La. Civ. Code art. 1789).

[24] *Id.* (citing La. Civ. Code arts. 1794).

[25] *Id.* at 3 (citing Rec. Docs. 135-2, 135-3, 135-4).

[26] *Id.* (citing Rec. Doc. 135-2).

[27] *Id.*

[28] *Id.*

4

Rentals, Inc." in exchange for the release of all claims.[29] Plaintiff asserts that this language "clearly evidences that the four Defendants agree to 'collectively' pay the singular sum of $315,000.00 to [Plaintiff] to settle this matter, which makes this a joint obligation."[30] Plaintiff contends that neither the email, nor the Agreement, indicates any separate amounts that would be paid individually by each Defendant.[31]

In support of Plaintiff's argument that the obligation is both joint and indivisible, Plaintiff cites to a Louisiana Supreme Court case, *Berlier v. A.P. Green Industries*.[32] Plaintiff contends that in *Berlier*, four defendants settled a matter for a lump sum amount, and after the settlement, one of the defendants filed for Chapter 11 bankruptcy and refused to pay a portion of the settlement.[33] Plaintiff avers that the plaintiff in *Berlier* refused to accept a partial payment from the other defendants and argued that the defendants were all solidarily liable for the lump sum amount.[34] Plaintiff contends that the Louisiana Supreme Court held that the obligation entered into by the defendants was a joint and indivisible obligation and, as such, the plaintiff could demand whole performance from any of the joint and indivisible obligors.[35] According to Plaintiff, the "intent of the parties can make money indivisible if it is an obligation meant to be performed as a whole."[36]

Plaintiff asserts that the Supreme Court of Louisiana relied on the following facts in

---

[29] *Id.* (citing Rec. Doc. 135-3).

[30] *Id.* at 3–4.

[31] *Id.* at 4.

[32] *Id.* (citing 01-1530 (La. 4/3/02); 815 So. 2d 39, 41).

[33] *Id.* (citing 815 So. 2d at 41–44).

[34] *Id.* (citing 815 So. 2d at 43–44).

[35] *Id.* (citing 815 So. 2d at 47).

[36] *Id.* (citing 815 So. 2d at 48).

5

determining that the lump sum payment was indivisible: "1) each defendant's pro-rate portion was not indicated in the settlement agreement; 2) defendants were represented by one law firm; 3) parties contracted for one lump-sum payment and the letter evidencing the settlement confirmed the object was a single sum; and 4) plaintiff was never informed as to how the lump-sum payment would be apportioned."[37] Plaintiff asserts that the facts in this case are "nearly indistinguishable from those in *Berlier*" because: (1) none of the settlement-related documents indicate the portions to be paid by Wood Group and Abe's Boat Rentals; (2) Energy XXI and Abe's Boat Rentals were both represented by the same counsel; (3) the first email agreeing to the settlement indicated that a lump sum would be paid by Wood Group, Abe's Boat Rentals, and Energy XXI without indicating how the settlement would be apportioned; and (4) the Agreement does not include any apportionment.[38]

### B. *Abe's Boat Rentals Arguments in Opposition to the Motion to Enforce the Settlement*

Abe's Boat Rentals contends that none of the parties to the Agreement intended that the Agreement was a joint and indivisible obligation.[39] Abe's Boat Rentals states that it and Energy XXI entered into a contract for the charter of Abe's Boat Rentals' vessels, which included an indemnity provision requiring Energy XXI to defend and indemnify Abe's Boat Rentals from any liability for bodily injury claims.[40] Abe's Boat Rentals asserts that Energy XXI undertook Abe's Boat Rental's defense in this case and agreed to pay any judgment entered against Abe's Boat

---

[37] *Id.* at 4–5 (citing 815 So. 2d at 48–49).

[38] *Id.* at 5.

[39] Rec. Doc. 140 at 1.

[40] *Id.* at 2.

6

Rentals.[41] According to Abe's Boat Rentals, the parties made a lump sum offer comprised of separate contributions by each Defendant during a settlement conference with a Magistrate Judge in the Eastern District of Louisiana on January 7, 2016, and that afterwards Plaintiff sought to separately settle with Energy XXI and Abe's Boat Rentals.[42] Abe's Boat Rentals asserts that at no time during settlement negotiations did Plaintiff communicate that it would only settle the claims if all Defendants agreed to a joint and indivisible obligation, nor did Plaintiff communicate that she believed them to be jointly and indivisibly liable.[43] Abe's Boat Rentals contends that the Defendants made lump sum offers that were to be funded 50% by Wood Group and 50% by Energy XXI, and all negotiations and settlements were made with the understanding that each Defendant would be responsible only for its share.[44] Abe's Boat Rentals alleges that, ultimately, Wood Group and Energy XXI verbally agreed that each would contribute $142,500 to the lump sum amount contained in the final Agreement, with Flow Petroleum funding $30,000.[45] Abe's Boat Rentals avers that the course of negotiations demonstrates that the parties never intended to make the obligation joint and indivisible.[46]

Abe's Boat Rentals further contends that Plaintiff accepted payment separately from Flow Petroleum despite the fact that it was treated the same as the other defendants in the draft

---

[41] *Id.*

[42] *Id.* at 3–5.

[43] *Id.* at 4 (citing Rec. Doc. 140-3).

[44] *Id.* at 4–5.

[45] *Id.* at 5–6.

[46] *Id.* at 7.

Agreement.[47] Abe's Boat Rentals points out that contrary to the arguments that the Agreement imposed a joint and indivisible obligation, Plaintiff does not seek to hold Flow Petroleum liable for the entire settlement agreement.[48]

Abe's Boat Rentals argues that Plaintiff, as "the party seeking to benefit from solidarity," has the burden to prove it exists, but that Plaintiff only relies on two "cherry picked" communications that do not reflect the entire settlement negotiation process.[49] Abe's Boat Rentals asserts that the case cited by Plaintiff, *Berlier*, is inapposite to the situation presented in this case because, in *Berlier*: (1) no party included in the release was an indemnitee of another party; (2) there was no evidence presented of underlying negotiations; and (3) there was no evidence that payment was being made on behalf of one of the released parties.[50] Furthermore, Abe's Boat Rentals contends that the defendants in this case, with the exception of Energy XXI and Abe's Boat Rentals, had separate counsel and, at times, conducted separate negotiations.[51] Abe's Boat Rentals avers that the Louisiana Supreme Court in *Berlier* stated that the payment of a sum of money is "in all respects divisible" unless the parties intended to treat the money as an indivisible obligation.[52]

In this case, Abe's Boat Rentals asserts, the affidavit of Bertrand Cass, Jr., Energy XXI's counsel, clearly shows that the parties did not intend for the settlement to be a joint and indivisible

---

[47] *Id.* at 7.

[48] *Id.* at 8.

[49] *Id.* (citing *425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co., Inc.*, 2015 WL 9001918, at *5 (E.D. La. Dec. 16, 2015)).

[50] *Id.*

[51] *Id.*

[52] *Id.* at 9 (citing 01-1530 (La. 4/3/02); 815 So. 2d 39, 48).

obligation, and the Agreement does not state that the defendants agreed to a joint obligation.[53] Furthermore, Abe's Boat Rentals asserts that even if the obligation was intended to be joint and indivisible between Flow Petroleum, Energy XXI, and Wood Group, it could never have been the intent of the parties that the obligation apply to Abe's Boat Rentals in light of the conduct of Energy XXI in defending and promising to indemnify Abe's Boat Rentals.[54] Abe's Boat Rentals contends that the Agreement reflects this consideration by using the wording "by or on behalf of" Abe's Boat Rentals rather than simply "by" Abe's Boat Rentals.[55]

C.     *Plaintiff's Reply Arguments in Further Support of Settlement Enforcement*

In reply, Plaintiff asserts that none the arguments raised or evidence produced indicates that Plaintiff was ever made privy to any agreement among Defendants regarding individual payments of the lump-sum settlement amount of $285,000.[56] Plaintiff contends that prior failed settlement discussions that did not end in an agreement do not define the terms and circumstances surrounding the negotiations that did result in an agreement.[57]

Plaintiff contends that *Berlier* is controlling because a federal court analyzing substantive state law issues must look initially to the decisions of the highest court of the state, *e.g.*, the Louisiana Supreme Court.[58] Plaintiff further argues that the "first fact" the *Berlier* court noted was that "if the parties had intended for the obligation to be divisible, then one would reasonably

---

[53] *Id.* at 9–10.

[54] *Id.* at 11.

[55] *Id.* at 12.

[56] Rec. Doc. 149 at 1.

[57] *Id.* at 1.

[58] *Id.* at 2 (citing *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 493 F.3d 191, 206 (5th Cir. 2007)).

suspect that they would have determined each defendant's pro-rata portion."[59] Moreover, in response to Defendants' evidence of the communications and agreements among the Defendants themselves, Plaintiff asserts that the Louisiana Supreme Court's analysis in *Berlier* focused upon what was known to both defendants and plaintiffs, not just what defendants understood the agreement to be.[60] Plaintiff contends that it knew only that an agreement as to a single sum was reached with Wood Group, Abe's Boat Rentals, and Energy XXI, not how the settlement amount would be apportioned.[61] Plaintiff asserts that Defendants never discussed which of them would pay what portion of the single sum agreed upon.[62] Plaintiff also points out that past, unsuccessful negotiations "do not alter the fact that from the beginning to the end of negotiations . . . [Defendants] presented a single front to Substitute Plaintiff" and did not discuss any apportionment agreement.[63] Furthermore, Plaintiff asserts that the application and effects of the indemnification agreement between the parties were not discussed with Plaintiff and therefore has no effect pursuant to the *Berlier* analysis.[64] Additionally, Plaintiff contends that while the Agreement included Flow Petroleum in the lump sum, that fact did not alter the underlying agreements that Flow Petroleum would pay $30,000 and the other defendants would pay the single sum of

---

[59] *Id.* (citing 815 So.2d at 48).

[60] *Id.* at 4.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at 6.

10

$285,000.[65] Moreover, Plaintiff asserts that how Louisiana tort law allocates liability is irrelevant once a contractual settlement agreement is reached.[66]

Finally, Plaintiff contends that it cannot see the fairness in requiring a widow and her children to seek payment through the bankruptcy court when it negotiated in good faith with Defendants and agreed upon a settlement amount.[67] Plaintiff asserts that she should not be punished because Wood Group, Abe's Boat Rentals, and Energy XXI failed to communicate appropriately with one another and to incorporate relevant underlying agreements into the agreement with Plaintiff.[68]

### III. Law and Analysis

*A.     Legal Standard*

"Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally."[69] Here, all parties agree that the Outer Continental Shelf Lands Act requires the application of Louisiana state law.[70] In Louisiana, contracts are interpreted based upon the parties' intent.[71] "The reasonable intention of the parties

---

[65] *Id.* at 5.

[66] *Id.* at 5–6.

[67] *Id.* at 6–7.

[68] *Id.* at 7.

[69] *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *E. Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1378, 1380 (5th Cir. 1988) (internal quotation marks omitted)).

[70] *See* Rec. Doc. 135-1 at 2 ("The Outer Continental Shelf Lands Act ("OCSLA"), therefore, requires the application of Louisiana law."); Rec. Doc. 74-1 at 9 ("The Outer Continental Shelf Lands Act ("OCSLA") applies to this dispute"); Rec. Doc. 69-1 at 5–6 ("The Outer Continental Shelf Lands Acts ("OCSLA") mandates the application of Louisiana law to the platform defendants, i.e. Energy XXI, Flow Petroleum, and Wood Group.").

[71] *Prejean v. Guillory*, 2010-0740, at 6 (La. 7/2/10); 38 So. 3d 274, 279.

11

to a contract is to be sought by examining the words of the contract itself, and not assumed."[72]  If the contract is unambiguous and does not have absurd consequences, the court applies the ordinary meaning of the contractual language.[73]  If the contract is ambiguous, however, the court may resort to parol evidence to interpret the contract.[74]

### B. Analysis

Here, all parties agree that a settlement agreement was reached for the total sum of $315,000, in exchange for Plaintiff releasing Defendants from all claims against them.[75]  The only disputed issue currently before the Court, therefore, is whether the parties intended for the Agreement to create a joint and indivisible obligation enforceable against Abe's Boat Rentals.[76]

The Fifth Circuit has held that "[a]lthough a district court has inherent authority to enforce an agreement to settle a case pending before it *summarily*, when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement."[77]  In *In re Deepwater Horizon*, the Fifth Circuit stated that a district court "may summarily enforce a settlement agreement if no material facts are in dispute."[78]

---

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *See* Rec. Doc. 135-1 at 1; Rec. Doc. 140 at 5–8.

[76] Rec. Docs. 135, 140.

[77] *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984).

[78] 786 F.3d 344, 354 (5th Cir. 2015).

For example, in *Mid–South Towing Co. v. Har–Win, Inc.*,[79] the Fifth Circuit remanded part of an order to enforce a settlement "because a party did not get an evidentiary hearing on a factual issue in dispute (attorney authority)."[80] There, the court held that the district court "effectively made a factual finding that [counsel] actually had been given authority to settle, without holding an evidentiary hearing" and despite the fact that affidavits of counsel did not "affirmatively prove" that the attorney had authority to settle the case.[81] Likewise, in *Noble Drilling, Inc. v. Davis*, the Fifth Circuit noted that several factual disputes regarding a settlement, such as whether the parties agreed to extend the deadline for payment and what additional medical payments were agreed to by the parties, required an evidentiary hearing.[82] Finally, in *In re Corrugated Container Antitrust Litigation*, the Fifth Circuit held that the district court had erred in failing to conduct an evidentiary hearing, and stated that summary enforcement of a settlement agreement "is ill-suited to situations presenting complex factual issues related to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve."[83]

However, in *Martin v. Jackson*, the Fifth Circuit stated that an evidentiary hearing was not required to enforce a settlement agreement, governed by Louisiana law, when the defendant "[did] not challenge the agreement's validity but instead the district court's interpretation of the

---

[79] *Mid-South Towing Co.*, 733 F.2d at 390.

[80] *Noble Drilling, Inc. v. Davis*, 64 F.3d 191, 195 (5th Cir. 1995) (citing *Mid-South Towing Co.*, 733 F.2d at 386).

[81] *South Towing Co.*, 733 F.2d at 391.

[82] *Noble Drilling, Inc.*, 64 F.3d at 195–96.

[83] 752 F.2d 137, 143 (5th Cir. 1985).

13

agreement."[84] The court noted that the defendant was erroneously interpreting the settlement agreement's provisions, and "[t]he factual issues [the defendant] identifies as justifying an evidentiary hearing are only relevant under his erroneous interpretation of the settlement agreement."[85] Thus, the court found that the district court did not err in summarily deciding the motion.[86]

Here, looking first at the plain language of the Agreement itself, the Court notes that the Agreement appears to be ambiguous with regard to whether the Defendants agreed to a joint and indivisible obligation. While the Agreement states that the sum of $315,000 would be paid "collectively" to Plaintiff "by or for the account of" the Defendants, the parties have plausibly presented two competing interpretations of this provision. Moreover, the parties have not identified any provision of the Agreement that erases the ambiguity as to whether Abe's Boat Rentals is jointly and indivisibly obligated to pay the entire sum or if payments on the lump sum were to be divided between the Defendants.[87] While parol or extrinsic evidence is normally inadmissible to vary the terms of the contract, it is admissible when "the written expression of the common intention of the parties is ambiguous."[88] Here, the parties present conflicting extrinsic evidence that creates a clear dispute of material facts regarding whether the parties intended to create a joint

---

[84] 633 F. App'x 286, 287–88 (5th Cir. 2016).

[85] *Id.*

[86] *Id.*

[87] *Campbell v. Melton*, 2001-2578 (La. 5/14/02), 817 So. 2d 69, 75 ("A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." (citing La. Civ. Code art. 1848; *Brown v. Drillers, Inc.*, 93–1019 (La. 1/14/94), 630 So.2d 741, 748; *Dixie Campers, Inc. v. Vesely Co.*, 398 So.2d 1087 (La.1981); *Rudman v. Dupuis,* 206 La. 1061, 20 So.2d 363 (La. 1944)).

[88] *Id.*

14

and indivisible obligation in their settlement agreement. In support of her motion, Plaintiff points to the text of the Agreement and extrinsic evidence of email communications solidifying the deal between the parties to argue that the parties clearly intended to create a joint and indivisible obligation.[89] Plaintiff also contends in her reply memorandum that she was not informed of any "side agreements and understandings" between the Defendants regarding any apportionment of settlement payments between them.[90]

In response, Abe's Boat Rentals points out that although the Agreement includes one lump sum amount for $315,000 against all four Defendants, Plaintiff concedes that Defendant Flow Petroleum is not subject to any joint and indivisible obligation for the total amount.[91] Thus, Abe's Boat Rentals argues that this demonstrates that the Agreement was not intended to create any joint and indivisible obligation against any Defendant.[92] Abe's Boat Rentals likewise introduces extrinsic evidence in support of its argument, such as: the parties' various past settlement negotiations, which never included any demand for or discussion of a joint and indivisible obligation;[93] an affidavit from Energy XXI's counsel, who states that such an obligation was not contemplated by the parties;[94] and evidence of an indemnification agreement between Energy XXI

---

[89] Rec. Doc. 135-1 at 3–4.

[90] Rec. Doc. 144-2 at 3–4.

[91] Rec. Doc. 140 at 7; Rec. Doc. 141 at 12–13.

[92] *Id.*

[93] *See* Rec. Doc. 140 at 2–7.

[94] Rec. Doc. 140-3.

15

and Abe's Boat Rentals, which Abe's Boat Rentals asserts shows that it never intended to be liable for any settlement amount.[95]

In light of the ambiguous terms of the settlement agreement and the conflicting evidence presented by the parties, the Court finds that an evidentiary hearing is necessary to resolve the motion under the controlling Fifth Circuit precedent.[96] Summary enforcement of the Agreement without an evidentiary hearing "is ill-suited" to determining this motion, as "only testimonial exploration in [an evidentiary hearing] is apt to satisfactorily resolve" the complex factual issues related to the formation and consummation of the settlement agreement.[97] Accordingly, the Court will order an evidentiary hearing on this issue.

### IV. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that an evidentiary hearing will be conducted regarding this matter on **January 20, 2017 at 10:00 a.m.**

**NEW ORLEANS, LOUISIANA**, this __30th__ day of November, 2016.

 **NANNETTE JOLIVETTE BROWN**
 **UNITED STATES DISTRICT JUDGE**

---

[95] Rec. Doc. 140 at 2; Rec. Doc. 140-1.

[96] *See Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984) ("Although a district court has inherent authority to enforce an agreement to settle a case pending before it *summarily*, when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement."); *In re Corrugated Container Antitrust Litig.*, 752 F.2d 137, 143 (5th Cir. 1985) ("Despite the existence of these factual disputes, however, the court did not give the parties notice of a plenary or evidentiary hearing."). *See also Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 612 (5th Cir. 2014) ("On appeal, both parties advance conflicting interpretations of the settlement agreement. Indeed, their disagreement is such that it calls into question the validity of the settlement agreement.").

[97] *In re Corrugated Container Antitrust Litigation*, 752 F.2d 137, 143 (5th Cir. 1985).